UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:03CV00556

2003 JUL -7 P 3:06

FILED
U.S. DISTRICT COURT
GREENSBORO, NC

Eric Hunter and Jocelyn )
Hunter, Husband and Wife, )
 )
    Plaintiffs, )
 )
v. )    **Amended Complaint**
 )    **Jury Trial Requested**
Charles & Colvard, Ltd. )
(formerly C3, Inc.), and )
Jeff N. Hunter, as Individual )
and former CEO and President )
of C3, Inc., )
 )
    Defendants. )

Plaintiffs, complaining of Defendants, allege and say:

## PARTIES

1.    Plaintiffs Eric Hunter and Jocelyn Hunter ("the Hunters"), husband and wife, are residents of Hilton Head, South Carolina.

2.    Defendant Charles & Colvard, Ltd., formerly known as C3, Inc. ("C&C"), is a North Carolina Corporation with its office and principal place of business at 3800 Gateway Boulevard, Suite 310, Morrisville, Wake County, North Carolina. C&C is a publicly-traded corporation listed on the NASDAQ/NM exchange, with approximately 13.3 million shares outstanding.

1

3. Defendant Jeff N. Hunter was CEO and President of C3 from 1996 to mid-2000, and is a resident of Durham County, North Carolina.

4. At all times material to this complaint, Plaintiffs held either common stock or stock options in C&C and its sister company, Cree, Inc. ("Cree").

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the Defendants pursuant to 28 U.S.C. Section 1331, in that Plaintiffs' rights and claims arise primarily under the laws of the United States.

6. This Court also has jurisdiction pursuant to 28 U.S.C. Section 1332, in that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and that the action is between citizens of different states.

7. Venue is proper with this Court, pursuant to 28 U.S.C. Section 1391.

## STATEMENT OF FACTS

8. Defendant C&C is engaged in the business of manufacturing, marketing and distributing moissanite jewels for sale in the worldwide jewelry market. Moissanite, also known by its chemical name silicon carbide (SiC), is a rare, naturally occurring mineral found primarily in meteorites. C&C developed a process to create moissanite jewels synthetically from SiC

2

crystals produced by Cree, Inc. ("Cree").

9. Like C&C, Cree is a publicly-traded corporation listed on the NASDAQ/NM exchange. The Chairman of Cree is F. Neal Hunter, the brother of Defendant Jeff Hunter and Plaintiff Eric Hunter.

10. Plaintiff Eric Hunter, the founder of Cree, held the rights to various valuable patents ("the Patents"), including those used in the manufacture of SiC crystals. In good faith, Plaintiff Eric Hunter gave C&C an irrevocable, exclusive, and perpetual license to manufacture gemstone products and gemological instrumentation using the Patents by a licensing agreement ("the Agreement") dated October 10, 1998. The Agreement required C&C, among other things, to pay Eric Hunter a royalty of 2.5% of C&C's net sales of gemstone products and gemological instrumentation developed using the Patents. C&C has never paid any royalties to Eric Hunter.

11. Immediately prior to C&C's Initial Public Offering in 1997, Cree officials demanded that C&C's corporate attorneys, Womble, Carlyle, Sandridge & Rice, PLLC ("Womble Carlyle"), certify Cree and C&C as non-affiliates. Upon information and belief, Deborah Hartzog of Womble Carlye acquiesced to Cree's demands and certified C&C as non-affiliated, despite its close business association with, and dependence upon, Cree.

Subsequently, Cree's counsel, Adam Broome, sent an e-mail to Womble Carlyle's Cyrus M. Johnson, Jr. apologizing for the pressure placed on his law firm.

12. Acting through its then-CEO and President Jeff Hunter, C&C entered into a long-term requirements agreement with Cree for the supply of silicon carbide crystals ("Requirements Agreement"). In addition to the Requirements Agreement, Jeff Hunter and F. Neal Hunter entered into an undisclosed side agreement ("Side Agreement") in May, 2000, that required C&C to accept unlimited shipments of SiC crystals from Cree.

13. Upon information and belief, the purpose of the Side Agreement was to augment the operating income of Cree artificially, to increase its projected earnings in public statements, and to bolster the per share value of Cree stock.

14. The Side Agreement gave Cree substantial control over the business and financial affairs of C&C, as C&C was obligated under that Agreement to accept unlimited shipments of SiC crystals from Cree.

15. The undisclosed Side Agreement between C&C and Cree resulted in a substantial cashflow deficit at C&C.

16. In May 2000, in an effort to revive its cashflow, C&C sold some of its assets to Cree for approximately $5.0 million. Cree already held a beneficial interest in the assets and had

4

originally sold them to C&C at a substantially higher price. Defendant Jeff Hunter promised that the sale proceeds would be used to continue payments to Cree under the Requirements Agreement.

17. At all times material to this complaint, Cree and various officers and directors of Cree, including F. Neal Hunter, held substantial blocks of C&C common stock. Upon information and belief, the officers and directors of Cree continued to trade in C&C stock throughout this period with the knowledge and acquiescence of C&C and Jeff Hunter.

18. Some of the above allegations, including the forced inventory buildup at C&C, have been widely reported in trade journals and other publications, suppressing the value of C&C and Cree stock.

19. After selling some C&C shares in November, 1997, Plaintiff Eric Hunter held less than 10% of C&C's stock. He was not involved in the operation of C&C's business after March of 1997, and had no inside information about C&C's business and operations. He was therefore a non-affiliate of C&C after November 1997 and entitled to non-affiliate status.

20. In early January of 1998, Plaintiff Eric Hunter requested that he be given non-affiliate status, which would have allowed him to sell C&C shares earlier than he could as an

5

affiliate. C&C's common stock was then selling at or near $17 per share.

21. C&C, together with its lawyers at Womble Carlyle, delayed changing Plaintiff Eric Hunter's designation to non-affiliate until at least mid-February of 1998, preventing him from selling his shares at the above-stated price of $17 per share. Upon information and belief, the intent of the delay and the effect of the delay were to support and manipulate the value of C&C stock to keep it artificially high at a time when Cree officers and directors were selling stock based upon their non-affiliate status.

22. Eric Hunter was not designated a non-affiliate until several days after C&C's quarterly reports were issued, noting that C&C had increased inventory problems.

23. During the interval between Eric Hunter's request for non-affiliate status and the date he was actually determined to be a non-affiliate, shares of C&C stock decreased substantially in value to approximately $11 per share.

24. As a result of these events, and Plaintiff Eric Hunter's protests to C&C and Cree officials, Defendant Jeff Hunter and a member of the C&C Board of Directors, Ollin Sykes, began harassing Plaintiffs in person and by telephone in an effort to prevent them from reporting the above corporate

6

misconduct to the Securities and Exchange Commission and other government authorities. Ollin Sykes, who is also a first cousin of Jeff, Neal and Eric Hunter, made numerous telephone calls to Plaintiffs using offensive language, including racial epithets, anti-semitic slurs, and other personally and politically offensive statements.

## COUNT I

### (Federal Securities Fraud)

25. Plaintiffs incorporate herein by reference Paragraphs 1 through 24 of this Complaint.

26. Defendants' acts and omissions described above constitute fraud and other actionable conduct in violation of the Securities Act of 1933 and other federal laws and regulations.

27. Defendants' acts and omissions described above adversely affected the value of C&C stock as well as the potential development of the market in moissanite jewels.

28. As shareholders in C&C, Plaintiffs have been damaged by Defendants' fraudulent acts and omissions described above.

29. Plaintiffs are entitled to recover from Defendants, jointly and severally, the direct, incidental and consequential damages they have sustained as a result of Defendants' fraudulent acts and omissions, along with attorneys' fees and costs, pursuant to 15 U.S.C. Section 77.

7

## COUNT II
## (Breach of Contract)

30. Plaintiffs incorporate herein by reference Paragraphs 1 through 29 of this Complaint.

31. Upon information and belief, Plaintiffs allege that C&C has in fact sold gemstone products and/or gemological instrumentation developed using the Patents since October 10, 1998.

32. C&C's failure to pay any royalties to Plaintiff Eric Hunter is a breach of the Agreement.

33. Plaintiff Eric Hunter is entitled to royalties under the Agreement in an amount to be proved at trial, together with interest as allowed by law.

34. Defendants have benefitted from the breach of contract described above, and it is inequitable for Defendants to retain the benefits they obtained through their breach of contract.

35. Accordingly, Plaintiff Eric Hunter is entitled to imposition of a constructive trust upon the assets of C&C, including but not limited to proceeds of future sales of gemstone products and gemological instrumentation developed using the patents.

8

## COUNT III
### (Breach of Fiduciary Duty)

36. Plaintiffs incorporate herein by reference Paragraphs 1 through 35 of this Complaint.

37. Defendant Jeff Hunter owed Plaintiffs and other shareholders a fiduciary duty with respect to the governance of C&C.

38. The acts and omissions of Defendant Jeff Hunter breached his fiduciary duty toward Plaintiffs.

39. The acts and omissions of Defendant Jeff Hunter adversely affected the value of C&C stock.

40. As shareholders in C&C, Plaintiffs have been damaged by the acts and omissions of Defendant Jeff Hunter.

41. Accordingly, Plaintiffs are entitled to recover from Jeff Hunter all of the damages that they have sustained as a result of his acts and omissions, along with attorneys' fees and costs.

42. Plaintiffs are entitled to recover punitive damages for Defendant Jeff Hunter's breach of fiduciary duty.

43. Defendant Jeff Hunter has obtained financial benefits by his acts described above. It is inequitable for Defendant Jeff Hunter to retain the benefits which he obtained by his breach of fiduciary duty.

9

44. Accordingly, Plaintiffs are entitled to a constructive trust.

## COUNT IV
### (Unfair or Deceptive Trade Practices)

45. Plaintiffs incorporate herein by reference Paragraphs 1 through 44 of this Complaint.

46. The transactions described above were unfair business acts in or affecting commerce, and so violated N.C. Gen. Stat. Section 75-1.1.

47. Plaintiffs are entitled to recover the damages that they have incurred as a result of Defendants' unfair or deceptive trade practices.

48. Plaintiffs are entitled to recover treble damages pursuant to N.C. Gen. Stat. Section 75-16, and attorneys' fees and costs pursuant to N.C. Gen. Stat. Section 75-16.1.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable.

WHEREFORE, Plaintiffs respectfully pray the Court that:

1. Plaintiffs have and recover from Defendants the sum of $10 million, with interest allowed by law, for securities fraud and other conduct set forth in Count I;

2. Plaintiff Eric Hunter have and recover from Defendants an amount to be proved at trial, with interest as allowed by law,

10

for breach of contract set forth in Count II;

    3.    A constructive trust be imposed as set forth in Count II;

    4.    Plaintiffs have and recover $10 million from Defendant Jeff Hunter, along with punitive damages, for breach of fiduciary duty and other misconduct set forth in Count III;

    5.    A constructive trust be imposed as set forth in Count III;

    6.    Plaintiffs have and recover $10 million dollars from Defendants, along with treble damages, for unfair and deceptive trade practices as set forth in Count IV.

    7.    The costs of this action, including reasonable attorneys' fees, be taxed against Defendants;

    8.    The Court grant such other and further relief as shall be just and proper.

11

Case 1:03-cv-00556   Document 3   Filed 07/07/03   Page 11 of 12

This the 7th day of July, 2003.

        UNTI & LUMSDEN LLP

By: /s/ Michael L. Unti
Michael L. Unti
   N.C. State Bar #16075
Margaret C. Lumsden
   N.C. State Bar #15953
Sharon L. Smith
   N.C. State Bar #21367
4020 Westchase Blvd., Suite 465
Raleigh, NC 27607
(919) 828-3966 (telephone)
(919) 828-3927 (facsimile)
Attorneys for Plaintiffs

12